ENTERED
LOGGED         RECEIVED

SEP 2 0 2019

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY                          DEPUTY

| | |
|---|---|
| IN THE MATTER OF A SEARCH WARRANT AUTHORIZING THE DNA SAMPLE COLLECTION FROM GREGORY WITT BUTLER | CASE NO.<br><br>19 - 3 0 6 0 BPG |

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT AUTHORIZING
## DNA SAMPLES COLLECTED FROM GREGORY BUTLER

I, James Walsh, Task Force Officer of the Federal Bureau of Investigation having been duly sworn, state as follows:

1.      This affidavit is being submitted in support of an application for a search warrant to obtain samples of DNA for comparison purposes in the form of saliva and hair for, GREGORY WITT BUTLER, a male born in the year 1990, with a Social Security account number ending in 7390, and having been assigned an FBI number ending in 8DD6.  BUTLER is further described as being approximately five feet, six inches tall, and approximately 175 pounds, with brown eyes and black hair.  A photograph is attached as Attachment "A" to this affidavit.  BUTLER is currently being held at the Northern Neck Regional Jail in Warsaw, Virginia.  I seek to seize this evidence in relation to investigations of violations of Title 18 U.S.C. § 922(g)(1) (Prohibited Person in Possession of a Firearm); Title 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances); and Title 18 U.S.C. § 924(c) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime).

2.      The applied-for warrant would authorize members of the FBI, or their authorized representatives, including but not limited to other law enforcement agents assisting in the below described investigation, to obtain DNA contained in saliva samples from the mouth and teeth of

1

BUTLER and contained in his hair.

3.     Because this affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. All conversations and statements described in this affidavit are related in substance and in part unless otherwise indicated.

## AGENT BACKGROUND

4.     I am a Detective with Montgomery County Police Department (MCPD), Special Investigations Division, Drug Enforcement Section, Major Offenders/Conspiracy Unit and have been employed with the MCPD since July 2008. Prior to being employed with MCPD, from October 2001 to July 2008, I was a sworn law enforcement officer with the United States Park Police. I have been specially deputized as a Task Force Officer (TFO) by the Federal Bureau of Investigation (FBI) and has authority under Title 21, United States Code, since October of 2014. I graduated from the Federal Law Enforcement Training Center (FLETC) in 2002 and the MCPD Training Academy in January 2009.

5.     During my sixteen years as a law enforcement officer, to include the past four years of conducting undercover narcotics investigations, I have performed controlled purchases of drugs and street level surveillance of drug transactions; utilized informants to make controlled purchases of drugs; worked in an undercover capacity on several occasions involving narcotics investigations targeting street level and interstate narcotics traffickers; obtained and executed search warrants as

2

a result of drug investigations; attended numerous courses and seminars covering drug recognition, interdiction, money laundering, conspiracy investigations and secure communications interception; participated in and been a co-case agent on Title III wiretap investigations involving federal narcotics violations; and been recognized and testified as an expert in narcotics trafficking by the Circuit Court and Juvenile Court for Montgomery County, Maryland.

6.      I have been involved in the investigation of several Organized Crime Drug Enforcement Task Force (OCDETF) investigations involving drug trafficking organizations. I have extensive experience in debriefing defendants, working with confidential informants, and various persons with direct experience with the methods used to distribute controlled substances. Through this training and experience, I have learned about the importation, manufacture, concealment and distribution of controlled substances, including, for example, cocaine, heroin, phencyclidine (PCP), and marijuana. I have become familiar with the use of telephones by drug traffickers to communicate, the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language, and terms that are used to disguise the source and nature of the profits of illegal drug dealing. Additionally, based on your affiant's training and experience and his participation in other narcotics investigations, your affiant knows the following: that it is common for drug dealers to "front," or provide on consignment, controlled substances to their customers; that it is common for drug dealers to conceal contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, vehicles and/or businesses for ready access; that it is common for drug dealers to conceal proceeds from law enforcement authorities and rival narcotics traffickers; that drug dealers routinely use cellular telephones to facilitate their drug distribution operations; that drug dealing is an ongoing process that requires the development, use, and protection of a communication network to facilitate daily

drug distribution; that drug dealers use telephones to thwart law enforcement efforts to penetrate the drug dealers' communication networks; and that narcotics traffickers commonly use "coded" language when speaking with other drug traffickers in order to thwart detection by law enforcement agents who may be intercepting their communications.

7.     During my employment as a law enforcement officer, I have been assigned to investigate violations of federal law including illegally possessing firearms and illegal firearms trafficking. Through my training and experience, I have become familiar with the manner in which firearms are frequently illegally possessed and trafficked.  I also generally know that Deoxyribonucleic Acid ("DNA") can be found on items such as firearms, ammunition and other gun parts, and can be compared to a sample of DNA from a known person.  DNA can also be recovered from items utilized in adulterating or processing illicit narcotics.  These items often include latex gloves which can be worn to protect an individual from potentially dangerous drugs and their potential side effects.

## PROBABLE CAUSE

8.     In 2016, Special Agents and Officers of the FBI, DEA and Montgomery County Police Department, Maryland (MCPD) began investigating the Gregory BUTLER drug trafficking organization (the "DTO"). The DTO distributes large quantities of heroin and cocaine in and around the Baltimore metropolitan area, multiple counties throughout Maryland, Virginia, West Virginia and Pennsylvania. In the course of the investigation, FBI/MCPD identified Gregory BUTLER, also known as "Sags," as a leader of the DTO.  The DTO has several associates to include Edward HALL, Tirrell SAUNDERS, Desmond RINGGOLD and Kareem MACK.

9.     The DTO operated in the Baltimore metropolitan area and was a narcotics source of supply for customers traveling from Maryland, Virginia, West Virginia, Pennsylvania, and the

District of Columbia. BUTLER had the access and means to distribute kilogram-level quantities of heroin and cocaine, in addition to crack cocaine. Weekly narcotics distribution is estimated at a range of one or more kilograms, supplied to customers by vetted DTO re-distributors at one of several pre-determined buy locations across the Baltimore metro area. It is estimated that over five hundred individual customers purchased from BUTLER or his co-conspirators by contacting one of his many phones, purchasing between user "point" quantities and/or redistributor quantities exceeding 100 grams.

10.     In the course of the investigation law enforcement officers were able to identify a residence that Gregory BUTLER utilized as a location where he stored and processed illicit narcotics. Investigators were able to establish the location of this residence through physical surveillance, video surveillance, precision GPS cellular data as well as intercepted phone calls where BUTLER was overheard processing drugs on the calls. The location of this residence was identified as 3901 Cedardale Road, Baltimore, Maryland.

11.     On February 7, 2019 law enforcement officers responded to 3901 Cedardale Road in the early morning hours. Officers conducted a "Trash Pull" operation from 3901 Cedardale Road. A "Trash Pull" is the removal and examination of discarded residential refuse, which is abandoned in the right of way or common area of the residence. Law enforcement officers recovered seven white trash bags. Located in the trash bags were the following

-   Numerous large zip lock plastic baggies with a pink powder substance, numerous large zip lock baggies with a brown powder substance/residue, a large heat seal bag with the number "425" written on the front, numerous zip lock baggies with white powder residue, and mail matter with the address of 3901 Cedardale Road, Baltimore, Maryland.

- Several caffeine powder bags and several bags with the name brand Mannitol on them. Based on my training and experience I know that caffeine and mannitol are commonly used to adulterate illicit narcotics.
- Several pairs of latex gloves.

12. All of the above listed items were processed and submitted for analysis to the Montgomery County Police (MCP) Crime Laboratory. Pursuant to this processing numerous DNA swabs were recovered from the latex gloves. On February 11, 2019 the MCP Crime lab returned with the drug analysis of these numerous large zip lock baggies. These bags tested positive for various amounts of heroin, fentanyl, tramadol and acetyl fentanyl.

13. On April, 5, 2019 law enforcement officers executed a United States District Court search warrant on a 2016 black Honda Accord, Maryland registration 26959CH, and Vehicle Identification Number (VIN) 1HGCT2B09GA006396 (hereinafter the "Honda"). The Honda lists its registration to "Butler Family Services" and during the investigation was the primary vehicle utilized by Gregory BUTLER. It was seized from the secure parking garage located where BUTLER's residence is located on April 3, 2019. Recovered from within the Honda were the following:

- A wallet and miscellaneous paperwork with Gregory BUTLER's name on it and in the name of "Butler Family Services".
- Located in a hidden compartment above the passenger seat glove box a Walther P22 .22 caliber semi-automatic handgun bearing serial number WA006344.
- Also located hidden within the dashboard were two plastic baggies each containing a brown chunk substance and white rocklike substance. Based on my training and experience these items were consistent with controlled dangerous substances. They

6

were subsequently submitted for analysis.

## REQUEST FOR A SEARCH WARRANT

14.     Given the facts set forth above, I have probable cause to believe that BUTLER has committed violations of Title 18 U.S.C. 18 U.S.C. § 922(g)(1) (Prohibited Person in Possession); Title 21 U.S.C. 846 (Conspiracy to Distribute Controlled Substances); and Title 18 U.S.C. § 924(c) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime).  As such, I respectfully request that this Court find probable cause that evidence of the aforementioned criminal violations is contained in the form of DNA in saliva and hair in the possession of BUTLER, specifically the mouth and teeth of BUTLER, a male born in the year 1990, with a Social Security account number ending in 7390, and having been assigned an FBI number ending in 8DD6.  BUTLER is further described as being approximately five feet, six inches tall, and approximately 170 pounds, with brown eyes and black hair.  A photograph is attached as Attachment "A" to this affidavit. BUTLER is currently being held at the Northern Neck Regional Jail.

WHEREFORE, I respectively request that the Court issue a warrant authorizing members of the FBI, or their authorized representatives, including but not limited to other law enforcement agents assisting in the above described investigation, to obtain DNA samples from BUTLER, so that the DNA sample may be compared to evidence collected during the course of this investigation, as described in this Affidavit.  The warrant will be executed at the U.S. Courthouse located in Baltimore, Maryland.

Task Force Officer James Walsh
Federal Bureau of Investigations

19 - 3 0 6 0 BPG

Sworn to before me this _19TH_ day of September, 2019

The Honorable Beth P. Gesner
Chief United States Magistrate Judge
District of Maryland

**ATTACHMENT A**

19 - 3 0 6 0 BPG



GREGORY WITT BUTLER, a male born in the year 1990, with a Social Security account number ending in 7390, and having been assigned an FBI number ending in 8DD6.  BUTLER is approximately five feet, six inches tall, and approximately 175 pounds, with brown eyes and black hair.  BUTLER is currently being held at the Northern Neck Regional Jail in Warsaw, Virginia.

The warrant will be executed at the U.S. Courthouse located in Baltimore, Maryland.